Video link in description Good morning, your honors. I'm Carol Powell-Langsing on behalf of Plaintiff David Green and his siblings. In regards to an excessive force case, we believe that the district court... Can you pull that microphone a little closer to you so we can hear you a little bit better? I apologize, your honor. My voice has a tendency of going out. But we believe that the district court erred in granting summary judges on the grounds that there were no genuine issues of material fact, that excessive force was used by those officers, mainly Officer Daniel, Officer Moore, and Officer McCall in this particular matter. In this particular case, we have a video. And in the context of video evidence, the U.S. Supreme Court has held in Scott v. Harris that video footage can conclusively refute a party's version of events. However, where the footage is ambiguous, incomplete, or contains material gaps, the Fifth Circuit has held a summary judgment that is inappropriate. If we agree with you that there is a video and there are five minutes gaps, but the summary judgment response didn't address the video, and there was no response to the motion for reconsideration, can that be a reason on appeal that you would be able to overturn the summary judgment? Yes, your honor. If you didn't argue that to the court in the district court as a reason? Because it's my understanding that the motion for summary judgment response does not even mention the video. And that there is no response filed to the motion to reconsider. But I could be wrong, and I would appreciate your helping with that. Well, your honor, in the context of the video, we do refute that there is a gap in the video. Did you do that in response to the summary judgment motion that was filed in the district court? And does that matter? It doesn't matter, your honor, and I'll tell you why. It doesn't matter because the court has to take the totality of the evidence. They have to look in the record and look at the entire record to see if there are genuine issues of material fact. And in this particular case, there are other evidence to give a jury a reasonable inference that the conduct that the officers used of excessive force, they can render a verdict in favor of Mr. Green. Now, that's really not what our case law says. Our case law has said again and again that it's up to the parties at the summary judgment stage to muster the evidence either for or against summary judgment. And we have opinions that say it's not up to the court to undertake some rambling, far-reaching investigation of the record to try to figure out what's there on summary judgment. But we did address the fact that there are other material facts that are actually in the record, i.e., Dr. Anderson's medical report to substantiate that excessive force was used by Officer Daniels and Moore and McCall. That in itself was addressed in our motion, in our opposition to summary judgment, would give rise to genuine issues of material fact that negates summary judgment. Okay. So the expert report, which was in the summary judgment record, does say that it was likely a knee to the neck that caused this problem. Right. But it doesn't say who did it. Correct. So you would have to have, and we have denials of affidavits to say that they said they didn't do it. So you would have to have the video in addition to say, well, they could have done it, and there's no one else there on the scene that could have done it. Therefore, it's circumstantial evidence. But was that argued to the district court? What was argued to the district court is that there was other circumstantial evidence in the record, Dr. Anderson's report. There was a mention of the video, if I can recall. And in addition to that, the mere fact that the affidavits were unrebutted does not negate the fact of the other material evidence that was in the record to substantiate the police officer's conduct. What did you argue to the district court, or not you personally, but what was argued to the district court? We argued to the district court that excessive force was used by those three officers. What evidence was used to support that? Dr. Anderson's autopsy report. Right, and that's helpful, but it doesn't say who did it. He doesn't opine who did it, but that doesn't negate the fact that it wasn't done because the evidence showed that these three officers were on site, and these three officers were the officers that restrained Mr. Harris. Okay. Isn't it at least clear, if we were to look at the video, that Officer Daniel didn't come down with the knee hard to the back of the neck? Because Officer Daniel is not in the position to inflict blunt force because he's in front of Harris. Well, Your Honor, we're not really sure when you look at the video that with that gap with Mr. Harris' upper body and neck out of the preview of the camera, Officer Daniel is shouting, hold his head. He's still contributing, and still contributing to the cause of death of Mr. Harris. You have him there on site, regardless of where his position was in the video. Okay. Okay. And Dr. Anderson also opined that the knee to the neck was not the sole cause of the death of Mr. Harris, that there were other possibilities. There were other injuries that he sustained as a result of the action of those police officers, such as blunt force trauma, head injuries, multiple abrasions to his forehead, cheek to his thorax and extremities, multiple areas of abrasion in his upper and lower extremities, recent contusion injuries, posterior ratio and right scapular regions, and that the complications of blunt force trauma, posterior neck with involvement of cervical spine for it, caused his death. So there was other evidence in the record to substantiate that their conduct contributed to the death of Mr. Harris, notwithstanding the fact of the close proximity of his death after their actions. The record reflects all of this evidence, which raises the inferences that there are genuine issues of material fact that a reasonable juror could infer from actually looking at the circumstantial evidence, in addition to the medical evidence, notwithstanding the video evidence, in light of the fact that there's a gap in the video. In addition to that, Your Honor, we feel that the court erred when they looked at those affidavits and they didn't look at all the evidence in the record to substantiate that. The court went back and reversed itself based upon credibility, which is prohibited by some of the judgment, because they gave credibility to the affidavits, notwithstanding that there is a video. But did you argue that to the district court? You didn't file anything at that point. Not you again. I'm not picking on you. Right, Your Honor. I understand that. But the mere fact that the affidavits were unrebutted, you still have... Right. Unrebutted affidavits. And there's nothing that's filed that says, Your Honor, there's circumstantial evidence that lends doubt on the veracity of these affidavits. There's a video, and there's a five-minute gap, and there's nothing that shows space aliens came down and inflicted these harms on people. So therefore, Your Honor, you can't just rely on the videos. I mean, you can't just rely on the affidavits. Just because someone says something in an affidavit, it can still be tested against the circumstantial evidence. None of that was argued to the district court, was it? It was not argued, but in respect to that, Your Honor, you still have the evidence that we did argue that was in the record that showed that there are genuine issues of material fact. The mere fact that they were unrebutted does not concede that there was no other evidence in the record that permits contrary emphasis that the jury can infer about. What is that evidence? The evidence, the medical evidence from Dr. Gibson. That contradicts the officer's affidavits. That contradicts the officer's affidavits? The evidence in the record is Dr. Anderson's report. That contradicts their evidence. But Dr. Anderson wasn't there. He couldn't see what the officers did or didn't do or whatever. I'm asking what evidence contradicts the officers' accounts of what they did and didn't do. The officers in their affidavit is stating that they did not put a knee on Mr. Harris' neck. Dr. Anderson, although he didn't say whom, he did say that based on his autopsy that he performed, because he performed the autopsy, that the contusions and the knee to the neck and based upon the circumstances that these officers were the ones that were constraining Mr. Harris, that's evidence to show that their conduct led to his death. Do you have anything further that you'd like to argue today, Joyce? Yes, Your Honor. I want to argue that the court erred in finding that Austner did not violate the Emergency Treatment Act. Well, in that particular act, Austner violated their duties because they did not intervene in when Officer Daniels said, oh, no, we're not taking him in the hospital. In fact, they took him to the hospital because he was experiencing a medical episode. And after, they basically constrained him and Mr. Harris had all these other injuries as a result of the force that was used by these officers. Not at one time, although the medical staff was observing what was going on, they were there with their gurney to basically take Mr. Harris inside the hospital. In federal, the Emergency Medical Treatment and Labor Act, their duties were triggered by the fact that Mr. Harris was basically on their campus. They still had a duty. They violated that duty. They never insisted to Officer Daniels, well, wait a minute, can we give him a medical? He refused to go in. He refused to go in. He refused over a period of time. He was resisting every effort to get him into the hospital to even request medical care. What case says that the hospital nonetheless had a duty to intervene in an arrest situation and take him into the hospital and provide care that he was refusing? Well, the Emergency Medical Treatment Act says that they have a duty. What case says that the EMTALA can be interpreted to include a duty here? What case? I know that the Emergency Act requires them to have a duty regardless of what the police officers, whether or not they have them constrained or not. Because they're there observing a medical emergency from the mere fact of the conduct caused by these officers. When they entered the campus of that hospital, Austin Hospital, that triggered their duties in regards to requiring the Emergency Medical Treatment Act requires them, based on that act, to at least have a medical screening and stabilization. Because they're there observing and they're witnessing an emergency situation. So what do they do? Do they put him in handcuffs? Do they strap him to a gurney? Do they force him inside the facility when he's refusing to go? What specifically should the hospital have done? The hospital should have intervened after the police conducted their restraining him and used excessive force. You heard my question. My question is physically, step by step, what should the hospital have done to have forced him into the facility when he was refusing? The hospital, at this point, he's rendering non-responsive. So they should have spoken to the police officer. They should have insisted, wait a minute, before you take him away to the jail, can we at least do a medical screening of Mr. Harris? Because we are observing a medical, that he's in medical distress at this particular point. They should have insisted to the police officer, at least step in and intervene. Not that the officer may or may not allow them to do it, but they at least had a duty to say, hey, can we at least screen this man before you take him to jail? They didn't do that. They violated their duty. They're in violation of their act. Speaking of duties, the plaintiffs had a duty to raise this claim properly and they didn't. They raised it in response to summary judgment. The district court didn't even have to consider this claim. Right, right. What gets you around that before we ever, we talked about the merits are sort of out of order. What gets me around that is that this is a claim that we're asking the court to allow us to amend our complaint in order to allow us to raise that claim. That particular claim arises out of the same facts, occurrences, and transactions, so it will relate back to the original petition on the 15C. Did you ask for that amendment? I'm sorry, Your Honor? Did you ask for that amendment? I did, yes. Yes, Your Honor, I asked for that amendment. We asked the court to allow us to amend that. At what time period in the case did you ask for that amendment? When I filed the opposition to the summary judgment. It's in opposition to the summary judgment at that time. We asked that the court allow us to amend the claims because it's not going to prejudice the defendants because it's based on the same facts, occurrences, and transactions that 15C would allow us an amendment to relate back to the original filing of the suit. And that's why we asked for it. You agree that you would need expert testimony to support the assertion that Harris' death could have been prevented had he received care in the time it took to transfer him to the OCC, right? Can you say that again, Your Honor? I'm sorry. You would need expert testimony to establish that the delay contributed to or caused his death. You don't need expert testimony from that. You can use causal observation from how he was. He was girdling, grunting. He was unresponsive. They had to take him. There was blood. You don't need an expert for that. The juror can look at the evidence for themselves and determine that, hey, just from observation, these are circumstantial evidence that relates back to their conduct that shows that their conduct caused his death. And not only that, he died within close proximity of the injuries that he suffered from the police officers. So, no, you don't need an expert for that. Okay. Anything further? I think that's all, Your Honor. I think your time is up. Thank you. I can't see that very well. I have to kind of sit up because it's so the way it is. So, thank you. I'm sorry. You've saved time for rebuttal. We'll hear from Mr. Kriegbaum. Yes, Your Honor. Good morning, Your Honors. Brandon Kriegbaum for the City of Monroe, and may it please the Court. Plaintiffs failed to raise a fact issue on an essential element of their claim, causation. Only the Louisiana state law claims remain against the City of Monroe. And under Louisiana law, plaintiffs had to prove that Officer Daniel's conduct was a but-for cause of Mr. Harris' death. So, plaintiffs could not raise a fact issue or prove that Officer Daniel caused the fatal injury, causation fails, and the City of Monroe cannot be held liable. The District Court applied that rule and granted summary judgment because plaintiffs never produced evidence, medical or factual, that anything Officer Daniel did caused the fatal injury, whether under their excessive force theory or their failure to provide medical care theory. So, I'm going to start first with the excessive force theory. Louisiana vicarious liability law is clear. The City is liable, if at all, only for the acts of its employee, not the acts of others, not guesses, not group attributions. So, plaintiffs must prove not only that the force caused the injury, but that it was Officer Daniel's force that caused the injury. Plaintiff's expert, Dr. Anderson, testified that Mr. Harris died from blunt force trauma to the back of the neck, resulting in a spinal cord injury. But Dr. Anderson went further than that. He said that that injury could only be caused by a hard, downward knee to the back of the neck. Not grabbing the neck, not shoving, not incidental contact, only that very specific mechanism. But critically, Dr. Anderson specifically did not offer an opinion on when the injury precisely occurred, and he did not attribute that injury to any specific officer. So, plaintiff's own causation witness, I think as she conceded this morning, never made the link that they needed. And you can't find that link elsewhere in the record, at least with respect to Officer Daniel. The body camera footage does not show Officer Daniel kneeing Mr. Harris' neck. No witness on the scene, and there were many. They could have circumstantial evidence that it had to be by that, but because of the five-minute gap. But they didn't argue that to the district court, did they? They did not make that argument to the district court, and the circumstantial evidence would have to support the inference. And that's one of the points that I'm going to make. With Officer Daniel, and again, that's the client whose conduct is attributable to the city. During the five-minute time period that the plaintiffs point to, Officer Daniel, it's his body camera footage. You can see that he is physically positioned in front of Mr. Harris. We asked a question about that. He is physically in position in front of him, and I think at the 9 minute and 30 second mark in Exhibit C2, he actually comments that his knee is on Harris' hand, because he's holding his hands down, fidgeting with the cuffs, trying to get the cuffs in. And you can see in the video, Officer Daniel's left knee on Harris' arm or hand, and his right leg is stretched out as he turns a few times. So at no point in time is Officer Daniel in any position during that five-minute period, when Mr. Harris is being restrained and they're waiting on backup, for him to do any act that would be consistent with the mechanism that Dr. Anderson described. Except if he changed his role during the gap. I'm sorry? We don't have any evidence of that. There's zero evidence that that occurred, and so possibility is, again, that's not sufficient to meet the standard under summary judgment. Plaintiffs, for the burden of proof of coming forward with some evidence, that at least raised the reasonable inference that Officer Daniel committed this act. And in this case, you have the body camera footage, which I think affirmatively disproves that Officer Daniel engaged in any of those acts. And you have the declaration. And again, you had numerous people on the scenes, and we highlighted this in our brief and in the district court. There was a universe of people that plaintiffs could have done discovery on, and gone and taken depositions, or secured other statements, to contradict any of the statements by Officer Daniel. There is none of that in the record. The only evidence in the record is the footage, which aligns with Officer Daniel's testimony that says, I did not engage in this particular conduct. I did want to take just a brief moment to address the timing principle. Again, plaintiffs rely on this five-minute gap. But with respect to Officer Daniel, they're asking this court to speculate that Officer Daniel, merely because he was present in this struggle, somewhere along the way, with no other inferential support, must have committed this act or been involved in this act. And I think this court's cases require the judge in the district court and in this court to view the evidence in the light depicted by the videotape. And for all the reasons that I just explained, the videotape aligns with Officer Daniel's declaration, I did not commit this act. So at bottom, I think plaintiff's general position, which can't prevail here, is that any time there's a gap in footage, there should be a jury question that's left for a jury to resolve. But a gap plus a guess, at least with respect to Officer Daniel, is insufficient to defeat summary judgment in this case. So I also would briefly like to turn to the second part, unless there are any further questions on the excessive force part. So briefly turning to the delay in transporting Harris to OCC, I think that theory fails for the same reason, there's no medical causation evidence. So plaintiffs must prove that delay changed the outcome, and speculation on that point is not enough. I think the Louisiana case, as we cited, specifically Piffner v. Correa, requires expert testimony when causation is medically complex. And I think specifically in Piffner, they said the question whether earlier or different treatment would have prevented the death is exactly the type of case where you would need some type of expert testimony. Plaintiffs had no expert testimony that hospital admission would have changed the outcome, that transport to OCC worsened Harris' condition, or that any earlier care would have prevented Harris' death. So there's no medical opinion in this record to support the plaintiff's claim. And as the district's court noted, plaintiffs simply ignored their burden on that point. That ends the claim, full stop. And so unless there's any other questions on that point, the city would have nothing further. Thank you. We have your argument. Thank you. Ms. White. Good morning, Your Honors. My name is Sarah White. I represent Officers Moore and Officers McCall in this matter. The district court correctly granted reconsideration in summary judgment because after accounting for the undisputed affidavits, testimonies, plaintiffs cannot establish causation. That's an essential element of both their 1983 and state wrongful death claim against Moore and McCall. And we would ask this court to affirm. The case first turns on procedure as to my defendants. The district court's initial order, which denied summary judgment, was interlocutory. And the court can revise an interlocutory order to correct manifest errors of fact, and that's exactly what happened in this case. The district court identified an error of fact in its earlier ruling as it failed to account for the sworn affidavit testimonies offered by Officers Moore and Officers McCall in support of the summary judgment. In the court's initial order, they focused exclusively on the five-minute gap that this court already identified from Officer Daniel's body cam footage. And it reasons that the absence of the video created a factual issue. The court didn't consider or analyze in any way the affidavits from Officers Moore and McCall, and the fact that they directly addressed the precise conduct which is alleged to have caused Mr. Harris' death, and that was a factual omission. The defendants moved for reconsideration, and the court recognized that omission, noting that the plaintiffs had two separate opportunities to rebut the affidavits, and they did not. They didn't submit evidence. They didn't contradict the testimony. There was a motion for reconsideration. This is not a case where the district court simply reconsidered because it changed its mind. It reconsidered because its earlier ruling rested on an incomplete factual analysis, one that omitted the undisputed evidence that was in the record, and under Rule 56E, the uncontroverted sworn testimony may properly be treated as undisputed. Correcting that error was well within the court's discretion, and reconsideration under that circumstances was not only permissible, we would argue it was necessary to prevent manifest injustice and ensure that the summary judgment standard was correctly applied. Now, once the affidavits were properly considered, granting summary judgment was correct. Again, causation is an essential element, and plaintiff bears that burden. Plaintiff's own medical expert, Dr. Anderson, testified that the fatal injury could only occur from a hard knee to a prone individual's neck. I believe I heard counsel argue earlier that Dr. Anderson kind of waffled on that. You know, there were multiple injuries, and I pulled from the record at Site 767, this is Dr. Anderson's testimony, where he says, well, he had other injuries, but yet the cause of death, what killed this guy, was the injury to the upper spinal cord. So Dr. Anderson, their own expert, narrowly, you know, narrows down the only cause of death in this matter. He describes later in his testimony, as the court will see in the record, an adult coming down with a hard knee to the back of the neck, not just a knee, but a drop with significant force. As this court can imagine, Dr. Anderson was questioned extensively in his deposition about his opinion and whether the fatal injury that he identified could have occurred by grabbing the neck, hitting the neck, pushing the neck, and he said no. He said only a hard knee could have caused this injury. That's the exclusive mechanism that he identified. And once the affidavits were considered, again, sworn, unrefuted, the record established, Moore and McCall did not place a knee on Mr. Harris's neck. Plaintiffs offered no evidence that they did, and their only opposition came from their use of force expert, Mr. Dixon, who offered no causation opinions whatsoever. So summary judgment in that instance was appropriate because plaintiffs failed to produce evidence on the essential element which they bear the burden. Plaintiffs argued that the five-minute gap in body cam footage creates a factual dispute for the jury, but it does not. The absence of video is not affirmative evidence of wrongdoing. A factual dispute requires competing evidence, not speculation or uncertainty. There is no competing evidence in this case. They've argued in their brief repeatedly that there's no objective evidence to corroborate the affidavits, but that's not the law. Testimony, even from a party, is confident summary judgment evidence if it's uncontradicted. I believe their reliance on Scott in this regard is misplaced. Scott talks about video evidence that blatantly contradicts a party's story or a party's testimony, and here, the body cam footage from Daniels contradicts nothing. It doesn't contradict Moore or McCall's testimony at all, and they don't point to any portion of the video that does. Plaintiffs have not submitted a shred of evidence indicating that a hard knee to the back of the neck occurred by officers Moore or officers McCall and that they were responsible for it. There's nothing in Scott that prevented the district court from accepting the affidavits as true. At summary judgment, plaintiffs must produce evidence not mere possibilities. Their own expert has limited causation to a single act, and the undisputed record shows that Moore and McCall did not commit this act. Unless the court has further questions, we would respectfully ask the court to affirm the district court's granting of the reconsideration of summary judgment as to officers Moore and McCall. Thank you. We'll hear from Mr. Petit. Is that correct? Petit, Petit, Petit, because it's got the little, it's in there. Yes, thank you. Mr. Petit. Thank you, Your Honor. Larry Petit and Kevin Feasel on behalf of B.R.F. H.H. Monroe, D.B.A. Oshner, LSU Health Monroe, the hospital, I was going to stand up here and say we didn't do it and sit down, but counsel inexplicably brought Oshner into this argument. So first of all, Judge Wilson pointed out procedurally she didn't appeal the motion for summary judgment. Judge Dowdy correctly applied what the Fifth Circuit says. If you've got, for the first time, an issue you're going to bring up at summary judgment, you've got two hurdles you've got to get to. First of all, the judge can just refuse to consider it because it's an untimely request to amend. She did not ask to amend. They just threw that, and as the judge pointed out, a couple of other, for good measure, statutory references that are completely inapplicable to the factual situation before the court. Or the judge can consider, look at the substantive request and make a ruling, and that's what Judge Dowdy did. And he ruled that it's a frivolous claim and that's how, at this point, therefore, it's denied. So technically, procedurally, they're in a bit of a box because they didn't appeal the underlying summary judgment as to us, which would be de novo. They're appealing a discretionary matter, which, in my opinion, Judge Dowdy was certain within his discretion in making the ruling. Number next, appellate counsel indicated some factual situations that aren't extant in this case. We're in a parking lot. We're not in the hospital. We're in a road stop that Officer Daniels is bringing this man walking down the middle of the street in Monroe for a wellness check. Counselor Appellate said he was unresponsive. Well, the video certainly shows that he was not. He was fighting with three to four police officers during this time. So, what Imtialov's application is is absolutely, to me, hard to understand, and I will note, and the court has in our brief that the plaintiff, in their initial petition, alleges the hospital staff were present with the stretcher to render aid to Mr. Harris. However, officers intervened. Later, four to five officers picked Mr. Harris up at the direction of Officer Daniels placing him in a car. As medical staff from the hospital on standby looked on with their restraint stretcher ready to take Mr. Harris inside the hospital. That's the allegations of the petition, of the complaint, sorry. That brings us to the motion for summary judgment which we prevailed on, which then leaps into do they have an Intialov claim? Absolutely not. Definitionally, they don't have an Intialov claim. Appellant Counsel respectfully suggests that the hospital nurses should have intervened with the actions of the police officers. That's a crime. We can't do that. Secondly, he's not there. He's not at our facility for medical care and treatment. He's being by decision, good decision, reasonably based in immunity of taxes to the police officer for making a decision to transport not for a wellness check but a combative prisoner in custody to the jail. And as Judge Elroy pointed out, how is there any causation with the hospital staff? His cause of death according to the autopsy was blunt trauma to the back of the neck and the spine. That has nothing to do with any of the allegations that there's an Intialov violation. So, Your Honor, for all those reasons we suggest that actually the Intialov claim against my client is frivolous and should not be overturned by Judge's decision saying some are just granted. Any questions? I'll be glad to answer. Thank you. We have your argument. Very good. Thank you. Ms. Lexing, you save time for rebuttal. Your Honor, you have two competing versions of facts in this matter. In the Supreme Court in this conference, Harris here, when opposing parties tell different stories, one which is blankly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purpose of ruling on a motion for summary judgment. What the plaintiffs and the defendants are suggesting is that Dr. Anderson report labeled the knee on the neck as the sole mechanism. He did not. He said this was, this caused his injuries, but there were other factors that contribute to that mechanism of the knee being on the neck. And because you had critical evidence that took place outside the purview of that video, we don't know what happened during that particular time which raises genuine issues of material fact. And as it relates to those affidavits, what the court basically did, there was no new evidence as it relates to the court reconsidering. The court can reconsider, but what the court did, it filled evidentiary gaps with the defendant's testimony. It resolved credibility in their favor. It rejected the reasonable inferences from the plaintiff. It reweighed the same evidence. It adopted a different credibility assessment and reversed itself after new evidence or legal error. Ms. White says that you did not oppose the motion to reconsider. Is that accurate? That's correct, Your Honor. But we have cases that basically says that the mere fact that you have other evidence in the record doesn't negate the fact or does not overrule. Affidavits can be credited over contrary inferences is what I'm trying to say. So you have that evidence in the record that shows that there are genuine issues of material facts. And as it relates to Osler, 42 CFR 48924B says that the emergency medical treatment applies not only inside the emergency department but across the entire hospital campus including parking lots. So once Mr. Harris was taken to Osler for treatment the duties were imposed upon Osler to at least two duties to do a medical emergency screening and for stabilization. And they didn't even insist to do that irrespective of whether he was combated or not. Excuse me. I'm talking. I'm sorry, Your Honor. Counsel for the  says that it would have been a crime for hospital personnel to have interfered with the officers at that moment. Your Honor, the nurse from Osler had already come in and cut Mr. Harris' shirt off. So obviously they interfered at that particular moment and they could have reasonably asked the police officer to at least insist allow us to do the medical screening because we see that there is a medical emergency for what we just witnessed here regarding Mr. Harris. They didn't do that. That was not there. That would not have been a crime. It wasn't a crime for her to step in and cut the shirt off. So it wouldn't have been a crime for them to insist that we do a medical screening. They could have asked but they never did. So no, Your Honor, that would not have been a crime. It's not like they would blatantly run in there and just start doing things. They could have reasonably asked the  They could have insisted based upon their observations of the medical trauma and the injuries that they observed him experiencing at that particular time as a result of the conduct of the police officer. So we're asking the court to basically reverse the summary judgments based on the record as a whole that the reasonable jury could draw an emphasis from the circumstantial evidence that's in the record in addition to the video. Because as we see,  has a gap in it and under Scott versus Harris, basically when opposing parties tell different stories, one of which is blatantly contradicted by the record and is our position that the defendant's version is blatantly contradicted because of the circumstantial evidence and the close proximity of the death of Mr. Harris after the police officers restrained him,  him, and caused those injuries that Dr. Anderson opined with not only in his deposition but in his autopsy report. And also,  we're asking the court to grant us leave to go back and  our complaint to add that emergency treatment act claim because it's not going to be prejudicial and under, I believe,  Your time has expired. I'm sorry, Your Honor. Thank you. Thank you for your time and attention. Thank you. We appreciate the arguments submitted. The court will stand in recess until tomorrow.